AO 91 (Rev. 11/11) Criminal Complaint      AUSA Esther S. Mignanelli (312) 353-5323

FILED
NOV 18 2019
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA

v.

STEPHEN GALATI

CASE NUMBER: 19CR 870

MAGISTRATE JUDGE COLE

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about November 16, 2019, at Cook County, in the Northern District of Illinois, Eastern Division, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 2113(a) | by intimidation, took from the person and presence of a bank employee, approximately $2,510 in United States currency belonging to and in the care, custody, control, management and possession of Fifth Third Bank located at 1801 West Algonquin Road, Rolling Meadows, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Corporation |

This criminal complaint is based upon these facts:

__X__ Continued on the attached sheet.

HERBERT E. HOGBERG III
Special Agent, Federal Bureau of Investigation (FBI)

Sworn to before me and signed in my presence.

Date: November 18, 2019

Judge's signature

City and state: Chicago, Illinois

JEFFREY COLE, U.S. Magistrate Judge
*Printed name and Title*

UNITED STATES DISTRICT COURT  
NORTHERN DISTRICT OF ILLINOIS | ss

## AFFIDAVIT

I, HERBERT E. HOGBERG III, being duly sworn, state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation, and have been so employed for over seventeen years. Previously I was a full time and part time police officer with the City of Elmhurst, Illinois for eight years. My current responsibilities include the investigation of violent crimes, including, among others, bank robbery, kidnappings, and the apprehension of violent fugitives.

2. This affidavit is submitted in support of a criminal complaint alleging that Stephen GALATI has violated Title 18, United States Code, Section 2113(a). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging GALATI with bank robbery, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3. This affidavit is based on my personal knowledge, including my interviews of witnesses, as well as information provided to me by other law enforcement agents and others.

I.   **FACTS SUPPORTING PROBABLE CAUSE**

4.   As further discussed below, on November 16, 2019, at approximately 10:45 a.m., GALATI robbed the Fifth Third Bank located at 1801 West Algonquin Road in Rolling Meadows, Illinois. Unbeknownst to GALATI, a GPS tracker device was included with the cash that GALATI stole from the bank. Following the robbery, the location information emitted from this tracker led law enforcement officers to a black Ford Fusion, which was later identified to be the vehicle driven by GALATI.

### Robbery of the Fifth Third Bank located at 1801 West Algonquin Road in Rolling Meadows, Illinois

5.   According to bank surveillance footage, on November 16, 2019, at approximately 10:45 a.m., the Fifth Third Bank located at 1801 West Algonquin Road in Rolling Meadows, Illinois, was robbed.

6.   According to a Fifth Third Bank teller ("Teller 1"), in the morning of November 16, 2019, Teller 1 was working at the bank. Teller 1 saw a male individual come into the bank through the front doors, approach Teller 1's window, and hand over a folded demand note. Teller 1 recalled this note read in effect and in part, "This is a robbery. Don't do anything stupid." Teller 1 also observed some numbers written on the note, but could not recall what the rest of the note said. When Teller 1 realized this individual was robbing the bank, Teller 1 became fearful for his/her life and fearful for the safety of others inside the bank.

7.   According to Teller 1, the robber then told Teller 1, "Don't do anything stupid. Give me everything you have in your drawer. No dye packs. Don't hit the alarm. Do as I told you or I will shoot you." The robber also gave Teller 1 a black

2

duffel bag, which he/she began to fill with money from Teller 1's teller drawer. While placing money into the duffel bag, Teller 1 also placed a GPS tracker into the duffel bag. Meanwhile, the robber repeatedly told Teller 1 to "Move" and "Hurry Up." After Teller 1 returned the duffel bag, the robber reached over the counter, grabbed the demand note from Teller 1, and left the bank out the front doors.

8. While Teller 1 was interacting with the robber, a bank customer ("Witness 1") was being assisted by another teller. According to Witness 1, Witness 1 heard the robber swearing at Teller 1, and saying things like, "Don't mess with me" and "You screwed me up." Witness 1 observed the robber reach over the counter. Around the time the robber was walking out of the bank, Teller 1 looked at Witness 1 and whispered, "I got robbed." Witness 1 then ran outside the bank and followed the robber. Witness 1 stated that the robber walked out of the bank like a "normal person" and walked into an adjacent restaurant, which is located just south of the bank. Witness 1 observed the robber remove a hood and a white hairnet he was wearing under the hood. Witness 1 stated he/she did not follow the robber inside the restaurant, because Witness 1 was afraid the robber was carrying a weapon.

9. Teller 1 described the robber as a white male, approximately 5 feet and 5 or 6 inches, with a skinny build, wearing jeans and a black-and-white shade of camouflage jacket/hoodie, with the hood pulled up over his head and the strings tied up to his chin. Underneath the hoodie, Teller 1 observed the robber was wearing some type of white head covering, which appeared to be a hairnet.

10. Witness 1 described the robber as a White male individual, approximately 5 feet and 9 inches, at least over 40 years of age, with light colored hair, and a noticeable large nose. Witness 1 observed the robber wore black sports pants, black gloves, Nike shoes, and a Nike black and silver sport jacket/hoodie, with the strings tied to cover around his face. Witness 1 did not observe the robber carrying a bag, but said stated that the robber stuffed money inside his pockets.

8. The still photos of video footage from inside the bank, which I reviewed following the robbery, showed, among other things, the bank robber to be a white male, around 50 to 60 years of age, and weighing approximately 180-200. The bank robber also wore a black-and-white camouflage-colored hood with the edges tightly pulled by a draw string concealing part of his face, glasses, a black long sleeve jacket with a black-and-white camouflage pattern on it, black gloves, black pants, black shoes, and also carried a black bag.

9. Based upon my review of the still photos of the bank's video footage, the bank robber entered the bank on November 16, 2019, at approximately 10:45 a.m., and left at approximately 10:47 a.m.

### GALATI's Flight from Law Enforcement and Arrest

11. Once the robber left the bank with the United States currency and GPS tracker in hand, location information from the GPS tracker was continuously provided to local law enforcement agencies. Based upon law enforcement officers' observations regarding the speed of the movement of the tracker, law enforcement believed the tracker was likely traveling in a vehicle.

12. On November 16, 2019, at approximately 11:01 a.m., Schaumburg Police Department officers, driving in marked patrol vehicles, were directed to the location of the tracker, which at the time was in the area of 1251 Basswood Road in Schaumburg, Illinois. While in that area, Schaumburg Police Department officers observed a black Ford Fusion with Illinois Registration ZZ89382 ("the Vehicle") drive past them at a high rate of speed. The officers then activated their emergency lights and sirens and attempted to stop the Vehicle, but the Vehicle did not stop and continued to drive away at a high rate of speed.

13. During the time officers attempted to stop the Vehicle, Schaumburg Police Department officers observed the driver throw a black bag from the Vehicle. Rolling Meadows Police Department officers later searched the bag tossed from the Vehicle and found inside of the bag a white hair net, a pair of black gloves, and sunglasses. Schaumburg Police Department officers also observed the driver throw a camouflage hat from the vehicle, which was later collected by Rolling Meadows Police Department officers.

14. Schaumburg Police Department officers then observed the Vehicle travel toward Roselle Road and Interstate 90. The Vehicle was last seen by Schaumburg Police Department officers entering Interstate 90 eastbound, and at this time Schaumburg Police units ended their attempts to stop the Vehicle. Based upon officers' observations of the GPS tracker location information around the time Schaumburg Police Department officers attempted to stop the Vehicle, officers

believed the location information emitted by the tracker was consistent with the movement of the Vehicle.

15. When the Vehicle entered Interstate 90 eastbound, officers provided the description of the Vehicle and its last observed location over the police radio network and the Illinois State Police Emergency Radio Network.

16. Based upon the GPS tracker location information, officers observed around this time that the tracker continued to travel east on Interstate 90 toward Chicago O'Hare International Airport.

17. According to Chicago Police Department officers at O'Hare, they were advised by their dispatch that the GPS tracker location information was showing the tracker in the area of Terminal 2 moving toward Terminal 3 of the Airport. When Chicago Police Department officers responded, they observed the Vehicle traveling from the area of Terminal 3 and going toward Interstate 190 eastbound.

18. According to Chicago Police Department officers, upon observing the Vehicle, they activated their emergency lights and sirens and attempted to stop the Vehicle, but the Vehicle continued onto Interstate 190 eastbound. While the Vehicle was still moving and approaching East River Road, officers observed a large amount of United States currency being thrown from the Vehicle onto the roadway. Multiple Chicago Police Department units stopped around this time to attempt to recover the United States currency. According to Chicago Police Department officers, while collecting the currency that was thrown from the Vehicle, officers also found the Fifth Third Bank's GPS tracker on the roadway nearby some of this cash.

19. The Chicago Police Department officers that continued to follow the Vehicle observed the Vehicle approach Cumberland Avenue, turn northbound on Cumberland Avenue, and continue into a residential area where the Vehicle was stopped by Chicago Police Department officers nearby 6809 Olmsted Avenue, in Chicago, Illinois.

20. According to Chicago Police Department officers, at approximately 11:30 a.m., GALATI, the driver and only occupant of the Vehicle at the time, was taken into custody. According to Chicago Police Department officers, at the scene, GALATI identified himself with another name. After he was later taken into Rolling Meadows custody, GALATI identified himself to officers as Stephen Galati. At that time, officers searched his name and date of birth and located an image of his driver's license, which also identified him as Stephen GALATI.

**Additional Identifications of GALATI as the Bank Robber**

21. ~~13.~~ Approximately 2 hours after the bank robbery, officers with the Rolling Meadow Police Department conducted a show up identification with Teller 1 by transporting GALATI to the Fifth Third Bank. Upon observing GALATI, Teller 1 stated, "That looks like him. But, he is not wearing the hairnet or the hood. I think that's him."

22. ~~14.~~ According to Illinois Secretary of State records, the Vehicle is registered to a relative of GALATI ("Witness 2"). Witness 2 was interviewed by law enforcement. Witness 2 stated that GALATI had been living with Witness 2 from around December 2017 until on or about November 2, 2019. According to Witness 2, on the morning of

7

November 16, 2019, GALATI drove Witness 2 to work in the area of Hicks Road and Euclid Avenue in Rolling Meadows, Illinois, dropping off Witness 2 at approximately 9:50 a.m. During the time Witness 2 was planning to be at work that day, Witness 2 believed GALATI was going to use the Vehicle to go grocery shopping, pick up prescriptions, and run errands. Witness 2 believed GALATI was going to pick up Witness 2 from work at approximately 6:00 p.m. on November 16, 2019.

23. Witness 2 was shown an Illinois Secretary of State photograph and bank surveillance photograph of GALATI. Witness 2 identified the individual in both of the photographs as GALATI.

### Loss to the Fifth Third Bank

24. After the robbery, Fifth Third Bank employees confirmed that the bank was robbed of approximately $2,510 in United States currency. Chicago Police Department officers recovered approximately $2,122 in United States currency from the cash that law enforcement officers observed the individual later identified as GALATI toss from Vehicle 1.

25. According to bank personnel and a law enforcement search of records maintained by the Federal Deposit Insurance Corporation, Fifth Third Bank was insured by the Federal Deposit Insurance Corporation at the time of the robbery.

## Conclusion

26. ~~18.~~ Based on the foregoing facts, I respectfully submit there is probable cause to believe that, on or about November 16, 2019, GALATI did, by intimidation, take from the persons and presence of bank employees approximately $2,510 in United States currency belonging to, and in the care, custody, control, management, and possession of Fifth Third Bank, located at 1801 West Algonquin Road, Rolling Meadows, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Corporation, in violation of Title 18, United States Code, Section 2113(a).

FURTHER AFFIANT SAYETH NOT.

_____
HERBERT E. HOGBERG III
Special Agent, Federal Bureau of Investigation

SUBSCRIBED AND SWORN to before me on November 18, 2019.

_____
JEFFREY COLE
United States Magistrate Judge